UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TERESA STEWART,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 1:12-CV-186-JVB |

**OPINION AND ORDER**

Plaintiff, Teresa Stewart, seeks judicial review of the final decision of the Defendant, Michael J. Astrue, Commissioner of Social Security, who denied her applications for Disability Insurance Benefits and Supplemental Social Security Income under the Social Security Act. For the following reasons, the Court remands this case to the Social Security Administration for further proceedings consistent with this Opinion.

**A. Procedural Background**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income disability ("SSI") benefits on February 26, 2009, alleging a disability onset date of May 29, 2008. (R. at 168–176.) Her application was initially denied on June 30, 2009, (R. at 101–103), as well as upon reconsideration on September 30, 2009 (R. at 111–113). Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 117–118.) The hearing was held before on August 23, 2010. (R. at 49–81.) On April 13, 2011, the ALJ determined the Plaintiff was not disabled. (R. at 27–40.) The ALJ initially found that Plaintiff does not have an impairment, or combination of impairments, that qualify as *per se* disabling. (R. at 30.) In defining Plaintiff's residual functioning capacity ("RFC"), the ALJ found that she is unable to:

> perform work that imposes close regimentation of production; handle intense contact with the public or strangers; work without the opportunity to sit or stand; walk or stand for more than 50% of the workday; reach extreme postures more than occasionally; walk or stand for longer than twenty minutes at a time; lift and carry greater than twenty pounds occasionally or ten pounds frequently; perform work requiring constant manipulation with the hands or fingers; work in atmospheric concentrations of dust, smoke, or fumes; work in temperature or humidity extremes; work in hazardous conditions; work around vehicles moving in close quarters; and reach more than ninety degrees of cervical rotation.

(R. at 32.) According to the ALJ, this RFC classification allowed for Plaintiff to perform a reduced range of unskilled, light work. (R. at 38.) The ALJ's opinion became final when the Appeals council denied Plaintiff's request for review on May 16, 2012. (R. at 1–4.)

Plaintiff was also denied DIB and SSI in 2005. (R. at 86.) A different ALJ found at that time that Plaintiff had an RFC that was consistent with mildly limited, sedentary work. Given Plaintiff's age at the time, forty-nine, Medical Vocational Rule 202.21 directed that Plaintiff was not disabled. *See* 20 CFR § 404, Subpt. P, App. 2. If Plaintiff was found to have the same RFC in the current decision, at an age of 52, Medical Vocational Rule 202.21 would direct that Plaintiff was disabled and would be entitled to benefits. *See Id*.

**B.  Factual Background**

**(1)**  *Plaintiff's Background and Testimony*

Plaintiff was born in 1958. (R. at 316.) She completed one year of college at Ivy Tech (R. at 55) and some job-related training (R. at 55–56.) Since the alleged onset date of May 29, 2008, Plaintiff has not had any income or employment. (R. at 179.) Plaintiff was last employed in 2005 as a receptionist and earned $1,260 per month. (R. at 202.) As a receptionist, Plaintiff answered switch boards, met vendors, ordered lunches, and generally managed the office. (R. at 217.) She was able to lift fifty pounds and regularly lifted twenty-five pounds. (*Id.*) She spent several hours walking and standing but spent the majority of the time sitting. (*Id.*) Before she was a receptionist, Plaintiff's longest held job was as a restaurant manager. (R. at 202.) She held this position for fourteen years. (*Id.*)

Plaintiff testified that she stopped working because she could no longer get out of bed in the morning and could not keep up with a regular schedule. (R. at 57.) She stated that one of her main problems is not being able to think properly due to her short term memory loss. (R. at 57.) She thinks she could go back to work if she was able to get her memory back but doubts that will ever happen. (*Id.*)

Beyond her mental problems, Plaintiff claimed that she is in nearly constant pain and suffers from extreme fatigue. (R. at 64–69.) Plaintiff further testified that these ailments not only affected her ability to work but also affected her ability to carry out normal daily activities. (R. at 68–71.) She alleges that she has trouble opening bottles (R. at 68–69), cannot look at a computer screen for more than ten minutes (R. at 69), and, on a "bad day", cannot get out of bed. (R. at 70.) Her household chores are limited to cleaning off the table after dinner a few times a week (R. at 71.) and keeping her bed made (*Id.*)

**(2)     *Medical Evidence***

On May 29, 2008, the alleged disability onset date, Plaintiff underwent lumbar decompression and fusion surgery because of a herniated disk that was severely compressing a nerve. (R. at 311–312.) The surgery initially alleviated some of the pain (R. at 349), but she later reported that the nerve pain returned and may have even gotten worse (R. at 340, 342). Medical reports have documented a history of Plaintiff suffering from neck, back, and shoulder problems. (*See* R. at 340, 345, 358, 385, 534, 602.)

Plaintiff also endures extreme, chronic fatigue. She has reported to psychologists that some days she cannot get out of bed (R. at 391), and that she can only work for ten to fifteen minutes before needing to rest. (R. at 423.) In addition, Plaintiff suffers from anxiety and depression, which may contribute to her fatigue. However, a rheumatologist, Dr. Campbell attributes a large amount of the fatigue to severe fibromyalgia. (R. at 489–490.)

**(3)     *Vocational Expert Testimony***

Vocational expert Charles McBee ("VE") testified at Plaintiff's August 23, 2010, hearing before the ALJ. (R. at 72–79.) The ALJ read to the VE a hypothetical set of limitations that closely resembled Plaintiff's final RFC. (R. at 73–74.) Based upon these limitations, the VE testified that this person could not perform any of Plaintiff's past work. (R. at 74.) The VE, however, did cite ten potential jobs that existed in significant numbers in both the Indiana and national economies. (R. at 75–78.)

Plaintiff's attorney then asked the VE a series of questions that added additional limitations to the ALJ's hypothetical. (R. at 76–79.) The attorney first asked if jobs would exist that

accommodated "no more than occasional hand and finger manipulation" as opposed to "no constant manipulation". (R. at 76.) The VE testified that, even with this additional limitation, there would still be jobs that existed in significant numbers. (R. at 76–77.) The attorney then added the limitation of "no manipulation of the hands and fingers" at all. (R. at 78.) The VE stated that there are jobs that exist, but only in limited numbers. (R. at 78.)

The attorney then added more extreme limitations. (R. at 79–80.) First, the attorney asked if a person that would need to rest in the lying down position after looking at a computer screen for twenty minutes could obtain employment. (R. at 79.) The VE testified that there are no jobs that could accommodate that limitation. (R. at 79.) The Plaintiff then proposed two more limitations: having to stand up and walk around for 50% of the work day and being absent more than one day per month. The ALJ stipulated that there would be no jobs that could accommodate such extreme limitations.

**(4)** *Appeals Council*

Plaintiff submitted additional medical records from Dr. David Lutz of the NueroSpine and Pain Center from late 2009 and early 2010. (R. at 648–665.) The evidence showed that Plaintiff had an affirmative diagnosis of fibromyalgia, received trigger point injections, and was prescribed Cymbalta. (R. at 648, 654–655, 661.) It attempted to rebut the ALJ's statement in his unfavorable decision that there was nothing in the record to show that Plaintiff was definitely given a diagnosis of fibromyalgia. (R. at 35.) The Appeals Council rejected this evidence as not providing a reason for changing the ALJ's decision. (R. at 2.)

Plaintiff also submitted medical records dating from before the alleged disability onset date and after the date of the ALJ's decision. (R. at 2, 666–818.) The Appeals Council rejected this evidence finding that it could not affect the ALJ's decision as it was from an irrelevant time period. (R. at 2.) The Appeals Council encouraged Plaintiff to file for Social Security Benefits again if she wished for that evidence to be considered. (*Id*.)

**C.     Standard of Review**

The Social Security Act requires the ALJ's decision to be supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court must uphold the decision if it is reached under the correct legal standard and supported by substantial evidence. *Rohan v. Chater*, F.3d 966, 970 (7th Cir. 1996). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). However, in reviewing the record and the ALJ's decision, this Court will ensure that the ALJ built an "accurate logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D.     Disability Standard**

To qualify for DIB or SSI benefits, the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) she is not presently employed;
> (2) her impairment is severe;
> (3) her impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1;
> (4) she is not able to perform her past relevant work; and
> (5) she is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step other than the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**E.     Analysis**

Plaintiff asserts four main issues on appeal: (1) whether the ALJ improperly assessed Plaintiff's credibility; (2) whether the ALJ legally erred in defining Plaintiff's RFC; (3) whether the ALJ improperly applied the Medical-Vocational Guidelines; and (4) whether the Appeals

Council properly rejected the submission of new evidence, namely, a medical report detailing an affirmative fibromyalgia diagnosis.

The Court is unable to assess the ALJ's credibility finding as he did not build a proper "logical bridge" between the evidence and the conclusion that nearly all of what Plaintiff testified to was "not entirely credible" or "not entirely persuasive.[1] Therefore, a remand is necessary.

The Court cannot reach the level of review on issues (2) and (3) because the ALJ may have incorporated a faulty credibility determination into the assessment of claimant's RFC. The Court does find, though, that the Appeals Council improperly rejected the new evidence, as it was both "new" and "material".

**(1)** *The ALJ's credibility assessment fails to build a logical bridge*

"An ALJ is in the best position to determine the credibility of witnesses, and we review that determination deferentially." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (*citing Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The Court will only overturn a credibility finding if it is patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Demonstrating that the ALJ's credibility finding is patently wrong is a high burden. *Turner v. Astrue*, 390 Fed. Appx. 581, 587 (7th Cir. 2010). But the ALJ must still build a sufficient logical bridge between the evidence and the conclusion to afford this Court the opportunity for meaningful review. *See Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000).

---

[1]This Circuit has held that the boilerplate language used in the ALJ's opinion, without more, is meaningless. *See, e.g., Parker v. Astrue*, 597 F.3d 920, 920 (7th Cir. 2010); *Bjornson v. Astrue*, 671 F.3d 640, 643 (7th Cir. 2012).

The ALJ begins his credibility determination with the familiar boilerplate language: "[t]he following allegations made by the claimant . . . are found to be not entirely credible, especially with regard to the extent or duration of the alleged symptoms and limitations." (R. at 33.) The ALJ then goes on to list nearly everything that the claimant has alleged. It appears to the Court that the ALJ believed almost nothing of what Plaintiff claimed.

The ALJ states that her credibility is lessened by several factors. (R. at 33.) The first of which is that she was previously found to be not disabled by the SSA in 2005. (*Id.*) The ALJ does not explain why he finds this to lessen her credibility. Plaintiff is not a serial filer[2] and her medical condition has significantly changed since her last filing[3]. The Court finds this determination to be especially troubling, because the ALJ in the 2005 case found her RFC to be consistent with sedentary work. A similar conclusion in this case, given her age, would yield a finding of disabled. Accordingly, the Court cannot find this to be a harmless error. On remand, the ALJ must explain why he found this to lessen Plaintiff's credibility.

The ALJ also found Plaintiff's daily activities to undermine her credibility. Plaintiff's daily activities include:

> being able to watch a computer for at least short periods of time, watch television, do some laundry, drive a car sometimes, leave her home unaccompanied, count change, go to church sometimes, talk on the phone to others, and read the Bible. In addition, the Claimant and Ms. Coe testified that the claimant tried to help clean up the kitchen two or three times per week and Ms. Coe added that the claimant kept her room clean.

(R. at 36–37.) The ALJ then stated that all of these activities support the finding that the claimant is not limited as she claims. (R. at 37.) It is unclear to the Court how these minimal daily activities undermine any of Plaintiff's allegations. It would seem that a person who suffers from severe pain and fatigue would still have the ability to count change. On remand, the ALJ must

---

[2] Besides the denial in 2005, Plaintiff has only filed for social security benefits one other time in 1981. (R. at 190.)
[3] Plaintiff had lumbar decompression and fusion surgery. Supra at 5.

9

articulate, at least minimally, why he finds these daily activities to be inconsistent with Plaintiff's alleged symptoms.

This is not to say that the ALJ failed entirely. The ALJ did cite to record and explained a significant portion of his conclusions. But this Court agrees with the principle that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws." *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) (*citing Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Adorno v. Shalala*, 40 F.3d 43, 44 (3rd Cir. 1994)). The ALJ stating that a prior denial of benefits lessens Plaintiff's credibility, without explanation, constitutes a deep logical flaw. Furthermore, the ALJ must explain why Plaintiff's ability to do minimal daily chores lessens her credibility in any way. *See, e.g., Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity").

**(2)** *RFC determination and the Medical-Vocational Guidelines*

Plaintiff claims that the ALJ did not consider her sleep dysfunction in defining the RFC. The Court agrees that the ALJ failed to adequately explain what role Plaintiff's sleep dysfunction had in the RFC assessment. The Court can only assume that the ALJ discounted the severity of the sleep dysfunction because of an adverse credibility finding. But because a claimant's credibility is determined before the RFC is assessed, this Court cannot reach the level of review on the issue of the RFC. To the extent that the ALJ does not believe Plaintiff's well-documented sleep

dysfunction, the ALJ should build a logical bridge between that conclusion and the evidence contained in the record.

For the same reasons, this Court cannot reach the level of review on the issue of the Medical-Vocational Guidelines.

**(3)** *The Appeals Council Improperly Rejected the New Evidence*

Plaintiff submitted additional medical evidence confirming a diagnosis of fibromyalgia to the Appeals Council. But the Appeals Council rejected the evidence finding that it "did not provide a basis for changing the ALJ's decision." (R. at 2.) This Court will review the Appeals Council's decision *de novo*. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).

The Appeals Council must consider the evidence if it is both "new" and "material." *Id.*; 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.") "New" simply requires that the evidence be new to the administrative record. *Farrell*, 692 F.3d 767, 771. Materiality, on the other hand, is a case-specific inquiry.

The ALJ based part of his decision on the fact that "there is no medical evidence of record to support a finding that the claimant was definitely given this diagnosis [of fibromyalgia]." (R. at 35.) The new evidence attempts to fill in this gap. It is certainly material if the Court agrees that there was no positive diagnosis of fibromyalgia. However, on page 490 of the record, it appears to the Court that Dr. Campbell diagnosed Plaintiff with fibromyalgia: "[s]he has severe fibromyalgia with trigger points, muscle pain, stiffness, fatigue and poor rest." In any event, the

11

Court still finds that the new evidence was material, as it provides a second, confirmed diagnosis of fibromyalgia. On remand, the ALJ must consider the new evidence, pp. 648–665 of the Administrative Record. The ALJ should also consider Dr. Campbell's findings.

Plaintiff also submitted medical records from before the alleged disability onset date and after the hearing date. The Council properly rejected that evidence because it did not relate to the relevant time period. *See* 20 C.F.R. § 404.970(b).

**F.     Conclusion**

The Court finds that the ALJ failed to build a logical bridge from the evidence to his credibility finding, which precludes this Court from meaningfully reviewing the decision. On remand, the ALJ is directed to revisit his decision and explain in greater detail his findings consistent with this Opinion. Furthermore, the ALJ is directed to incorporate into the record pp. 648–665 and consider the evidence contained therein.

The Court vacates the ALJ's opinion and remands this case to the Social Security Administration for further proceedings consistent with this Opinion.

SO ORDERED on July 23, 2013.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE